WYNN, Circuit Judge,
dissenting:
In Walker v. Texas Division, Sons of Confederate Veterans, Inc., — U.S. -, 135 S.Ct. 2239, 192 L.Ed.2d 274 (2015), the Supreme Court majority did not address, much less overrule, this Circuit’s commonsense recognition that speech can be “mixed” — i.e., that it can have elements of both government and private speech. Insisting otherwise is tantamount to “insisting that a mule must be either a horse or a donkey.” David A. Anderson, Of Horses, Donkeys, and Mules, 94 Tex. L.Rev. See Also 1, 4 (2015).
I refuse to believe that with Walker, the Supreme Court meant to force us to choose that the mule in this case is either a horse or a donkey. Instead, Walker’s holding, when narrowly understood, does *186 not lead to the conclusion that the North Carolina specialty plate speech at issue here constitutes pure government speech. On the contrary, based on the specifics of this case, it presents mixed speech — with private speech components that prohibit viewpoint discrimination. Accordingly, the district court correctly held that in allowing a “Choose Life” specialty plate while repeatedly rejecting a “Respect Choice” plate, North Carolina violated the First Amendment. Respectfully, I therefore dissent.
I.
A.
“Premised on mistrust of governmental power, the First Amendment stands against attempts to disfavor certain subjects or viewpoints.” Citizens United v. Fed. Election Comm’n, 558 U.S. 310, 340, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010). Chiéf amongst the evils the First Amendment prohibits are government “restrictions distinguishing among different speakers, allowing speech by some but not others.” Id. Indeed, the Supreme Court has called viewpoint discrimination “an egregious form of content discrimination” and has held that “[t]he government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.” Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 829, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995).
The First Amendment’s neutrality protections check only government regulation of private speech. By contrast, when the government engages in its own expressive conduct, the Free Speech Clause and its viewpoint neutrality requirements have “no application.” Pleasant Grove City, Utah v. Summum, 555 U.S. 460, 467, 129 S.Ct. 1125, 172 L.Ed.2d 853 (2009). Under the “relatively new, and correspondingly imprecise” government speech doctrine, Johanns v. Livestock Mktg. Ass’n, 544 U.S. 550, 574, 125 S.Ct. 2055, 161 L.Ed.2d 896 (2005) (Souter, J., dissenting), the government is generally “entitled to say what it wishes, and to select the views that it wants to express,” Summum, 555 U.S. at 468, 129 S.Ct. 1125 (quotation marks and citations omitted).
In this Circuit, we have recognized “mixed speech”' — -that is, speech that is “neither purely government speech nor purely private speech, but a mixture of the two.” Planned Parenthood of S.C. Inc. v. Rose, 361 F.3d 786, 789 (4th Cir.2004). In deciding whether speech is private, government, or mixed, we have looked to instructive factors including the purpose of the program in which the speech has occurred and the identity of the literal speaker. Id. at 793; Sons of Confederate Veterans, Inc. v. Comm’r of Va. Dep’t of Motor Vehicles, 305 F.3d 241, 245-46 (4th Cir.2002); Sons of Confederate Veterans, Inc. v. Comm’r of Va. Dep’t of Motor Vehicles, 288 F.3d 610, 618 (4th Cir.2002). And in the context of several' states’ specialty license plates, we have held that the instructive factors indicated mixed speech but tipped in favor of private speech interests so as to prohibit viewpoint discrimination. Id.
Last year in Walker, the Supreme Court deemed a Texas specialty license plate to be government speech free from First Amendment protections against viewpoint discrimination. 135 S.Ct. 2239. In doing so, the Supreme Court relied on Summum, 555 U.S. 460, 129 S.Ct. 1125, a case dealing with privately donated permanent monuments in public parks. In Walker, as in Summum, the Court focused on three factors: (1) “the history of license plates;” (2) observers’ “routine” and “reasonable” *187 associations between the speech at issue and the state; and '(3) the extent of state control over the message conveyed. Walker, 135 S.Ct. at 2248-49 (quotation marks and citation omitted). “These [three] considerations, taken together” convinced the Supreme Court that the Texas specialty plate speech at issue was “similar enough” to the privately donated monuments in public parks at issue in Summum “to call for the same result” — that is, that both constituted pure government speech. Id.
B.
Applying the Walker framework here, I conclude that North Carolina’s authorization of a “Choose Life” plate and rejection of a “Respect Choice” plate is not simply pure government speech. And because the speech is not just the government’s, North Carolina’s allowing a “Choose Life” plate while rejecting a pro-choice plate constitutes viewpoint discrimination in violation of the First Amendment.
Beginning with the first Walker factor, North Carolina began putting slogans on its license plates in 1954, adding graphics in 1981. J. Fox, License Plates of the United States 77 (1994). North Carolina’s vast array of specialty plates honoring, for example, Corvettes, Piedmont Airlines, and out-of-state universities, substantially postdates the use of a standard state slogan. See id.; N.C. GemStat. § 20-79.4.
The legislative history of North Carolina’s specialty plate program indicates that it was intended to be a forum for private expression of interests — that is, “ ‘voluntary speech that people are making by purchasing the license plate.’ ” Am. Civil Liberties Union of N.C. v. Tata, 742 F.3d 563, 572 (4th Cir.2014) (citing Remark of Representative Tim Moore to the North Carolina House Fin. Comm. (June 2, 2011)). Not surprisingly, then, North Carolina expressly and repeatedly “invite[d] its vehicle owners to ‘[m]ake a statement with a specialized or personalized license plate’ and to ‘find the plate that fits you.’ ” Id. (citations omitted). Further, North Carolina “describe[d] its specialty plate program as ‘allowing] citizens with common interests to promote themselves and/or their causes.’ ” Id. (citation omitted). This history supports the conclusion that the challenged speech was not the government’s.
Regarding the second Walker factor, whether there exists a “routine” and “reasonable” association between the speech at issue and the government, Walker, 135 S.Ct. at 2248-49 (quotation marks and citation omitted), the specifics before us call any such strong association into serious doubt. In analyzing the second Walker factor, for example, the Supreme Court considered whether “persons who observe[d]” the Texas plates at issue there “routinely' — -and reasonably — interpret them .as conveying some message on the issuers’ behalf’ and whether “a person who displays a message on a ... license plate likely intends to convey to the public that the State has endorsed the message.” Walker, 135 S.Ct. at 2249 (quotation marks, brackets, and citation omitted). A person who sees a North Carolina “I’d Rather Be Shaggin’ ” specialty plate during. Monday morning rush hour surely does not routinely and reasonably believe that such a plate embodies the State of North Carolina’s credo.' Nor is it likely that a North Carolina Libertarian who applies for a “Don’t Tread On Me” specialty plate is motivated by a desire to convey to the public the government’s seal of approval.
Again, North Carolina repeatedly told its citizens that they can “ ‘[m]ake a statement with a specialized or personalized license plate,’ ” inviting them “to ‘find the plate that fits you’ ” in a “specialty plate *188 program ... ‘allow[ing] citizens with common interests to promote themselves and/or their causes.’ ” Tata, 742 F.3d at 572 (quoting North Carolina Division of Motor Vehicles website). North Carolina’s refrain has surely sunken in and must impact the way the North Carolina public views its specialty plates — as a forum allowing them to make a statement and promote themselves and their causes, just as their government described.
Finally, regarding the third factor, state control over the messages conveyed on specialty plates, here, as in Walker, the state government controls the final wording and appearance of specialty plates. Id. at 2249; N.C. Gen.Stat. §§ 20-63, 20-79.3A, 20-79.4. North Carolina’s General Assembly must authorize the issuance of any new specialty plates. Id. And, as Plaintiffs’ own verified complaint demonstrates, North Carolina exercises its authority not simply to authorize new specialty plates but also to reject proposed plates: Plaintiffs complain that North Carolina “has expressly and repeatedly rejected the development of a pro-choice license plate.” J.A. 11. Plaintiffs concede that the control factor tilts in the government’s favor.
According to North Carolina, the control factor alone is dispositive as to whether speech is the government’s. North Carolina claims that “the Supreme Court’s Walker opinion sets out a new test” — the so-called “control test” — that “focuses solely on the level of government control.” Appellants’ Supp. Br. at 4. Yet Walker does no such thing. Indeed, the words “control test” appear nowhere in Walker, and for good reason. The Supreme Court surely recognized that hinging government speech on government control alone could incentivize the government to increase its control over speech, thereby deem the speech its own, and then use its freedom from First Amendment constraints to discriminate against disfavored speakers and messages at will. Nothing in Walker suggests that the Supreme Court supports such a circular inquiry that could so easily enable a “subterfuge for favoring certain private speakers over others based on viewpoint.” Summum, 555 U.S. at 473, 129 S.Ct. 1125.
Applying all three of the factors the Supreme Court laid out in Walker to the specifics of this case shows that the speech at issue is a mixed picture tilting in favor of private speech. I do not deny that some elements of North Carolina’s specialty plates, like the state name and the vehicle’s tag number, are unquestionably government speech. But the “designated segment of the plate [that] shall be set aside for unique design representing various groups and interests” can, and here does, contain private speech. N.C. Gen. Stat. § 20-79.4.
On appeal, North Carolina argued only that because its specialty plates are government speech, North Carolina can viewpoint-discriminate free from First Amendment constraints. On its lone issue, North Carolina should lose: Because the speech at issue is not purely the government’s, the First Amendment’s constraints on viewpoint discrimination apply. And in authorizing a “Choose Life” specialty plate while refusing to authorize a pro-choice specialty plate, North Carolina violated those discrimination constraints. The district court’s holding to that effect, which is in no other respect challenged, should therefore stand.
II.
“Never has the line between the public and private sectors been as blurred as it is today. Private companies run state prisons and public hospitals. Public — private partnerships develop real estate and build *189 sports facilities and office buildings. Management of public schools is delegated to private companies.” Anderson, 94 Tex. L.Rev. See Also at 4. And the lines have blurred in the speech realm, too, as “stadium scoreboards of public universities tout not only the teams and schools, but also soft drinks, banks, and car dealers” and cities and schools sell logos and logo placements to private entities. Id. at 5. Such speech need not be viewed simplistically as all government or all private.
North Carolina invited its vehicle owners to “[m]ake a statement” and “promote themselves and/or their causes” — but only if they were on the government’s side of a highly divisive political issue. This, North Carolina may not do. Because the specialty plate speech at issue is not pure government speech, North Carolina’s allowing a “Choose Life” plate while rejecting a pro-choice plate constitutes viewpoint discrimination in violation of the First Amendment. For this reason, I would affirm the district court’s ruling in Plaintiffs’ favor and must respectfully dissent.